**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FIRST TRUST PORTFOLIOS L.P.<br>        an Illinois limited partnership, and<br>FIRST TRUST ADVISORS L.P<br>        an Illinois limited partnership,<br><br>                Plaintiffs,<br>        v.<br><br>JNL VARIABLE FUND, LLC,<br>        a Delaware limited liability company,<br>JACKSON NATIONAL LIFE INSURANCE<br>COMPANY,<br>        a Michigan company,<br>JACKSON NATIONAL LIFE DISTRIBUTORS,<br>LLC<br>        a Delaware limited liability company,<br>JACKSON NATIONAL ASSET MANAGEMENT,<br>LLC,<br>        a Michigan limited liability company,<br>JNL INVESTORS SERIES TRUST,<br>        a Massachusetts business trust, and<br>MELLON CAPITAL MANAGEMENT<br>CORPORATION,<br>        a Delaware corporation,<br><br>                Defendants. | Civil Action No. 07C 3011<br><br><br>Hon. James B. Moran<br><br>Hon. Martin C. Ashman |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 41(a)(2)**

Plaintiffs First Trust Portfolios L.P. and First Trust Advisors L.P. (collectively "First

Trust") respectfully move the Court for an Order dismissing this action without prejudice,

including all counterclaims of Defendants JNL Variable Fund, LLC, Jackson National Life

Insurance Co., Jackson National Life Distributors, LLC, Jackson National Asset Management,

LLC, JNL Investors Series Trust (collectively, "JNL"), and Mellon Capital Management Corp.

("Mellon"). This Motion is premised on FED. R. CIV. P. 41(a)(2) and the controlling authority of

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) and its progeny, holding that cases must be dismissed when the patent holder grants the appropriate covenant not-to-sue to an alleged infringer. Such a covenant is provided in First Trust's Statement of Non-Liability (attached hereto as Ex. 1).

In its covenant, First Trust expressly promises that it will not assert U.S. Patent No. 7,206,760 ("the '760 patent") against the funds accused in this action, as those funds are defined by the applicable prospectus amended on December 3, 2007, and specifically waives its right to recover damages for infringement of the '760 patent by those funds to the extent such infringement occurred prior to February 6, 2008. By doing so, First Trust has now unequivocally given up the right to collect damages for infringement of the '760 patent as alleged in its Complaint. The effect of this Covenant, as a matter of settled Federal Circuit law, is to eliminate any presently known case or controversy over the validity or infringement of the '760 patent.

In view of First Trust's Statement of Non-Liability, Defendants' declaratory relief counterclaims lack subject matter jurisdiction, and the Court therefore should dismiss Defendants' counterclaims pursuant to FED. R. CIV. P. 12(b)(1). Additionally, by this Motion, First Trust's respectfully requests that its patent infringement claim be voluntarily dismissed without prejudice pursuant to FED. R. CIV. P. 41(a)(2). In short, the granting of this Motion would dispose of this case in its entirety.

## I.  PROCEDURAL HISTORY

On May 30, 2007, First Trust filed its Complaint for Patent Infringement with this Court. (Docket No. 1.) In its Complaint, First Trust alleged that JNL and Mellon made, used, sold, and/or offered for sale in the U.S. variable annuity products identified as:

(1)     the JNL/Mellon Capital Management NASDAQ® 15 Fund,

2

    (2)        the JNL/Mellon Capital Management Value Line® 25 Fund,

    (3)        the JNL/Mellon Capital Management VIP Fund,

    (4)        the JNL/Mellon Capital Management JNL Optimized 5 Fund, and

    (5)        the Jackson Perspective Optimized Fund

where, for each identified fund, a group of securities is selected according to a method that infringed the '760 patent (hereafter referred to as "the Accused Funds"). (*Id.* at ¶¶ 23, 26.)

Concurrent with filing the suit, First Trust sent cease and desist letters to 16 trustees, officers, and managers of the Accused Funds. (*See, e.g.*, 5/30/07 from Jarvis to Bouchard, attached as Ex. 2.) In each of those letters, First Trust enclosed a copy of the '760 patent, explaining that it was "surprised when it learned that JNL had flagrantly copied First Trust's patented security selection method for use in various JNL variable annuity investment options," and requested assurances that JNL would cease and desist from any further use of First Trust's patented investment strategy. (*Id.* at 2.)

On June 8th, First Trust received a letter from Defendants requesting "at least six weeks to respond to [the cease and desist] letter[s]." (6/8/07 letter from Patel to Jarvis, attached as Ex. 3.) In response, First Trust agreed to extend the June 8, 2007 deadline stated in its May 30th letter to July 9, 2007. (6/13/07 letter from Sherry to Patel, attached as Ex. 4.) In addition, First Trust informed Defendants that it would consider any reasonable business solution that Defendants wished to propose to resolve the matter. (*Id.*) Defendants proposed no such solutions, instead sending a letter to First Trust in which they "adamantly" denied infringement. (7/9/07 letter from Patel to Jarvis, attached as Ex. 5.) By agreement, Defendants accepted service of process of the summons and complaint. (7/11/07 e-mail from Patel to Sherry, attached as Ex. 6.)

Defendants filed their Answers to First Trust's Complaint on August 15, 2007. (Docket Nos. 14 and 15.) In their Answers, Defendants asserted counterclaims for a Declaration of Non-Infringement and a Declaration of Patent Invalidity. (*Id.*) First Trust replied to Defendants' counterclaims on September 5, 2007. (Docket Nos. 17 and 18.)

At the end of November 2007 – nearly six months after receiving the cease and desist letters – Defendants redesigned the investment strategies that were used to generate the funds named in First Trust's Complaint. (11/28/07 e-mail from Ferguson to Sherry, attached as Ex. 7.) Defendants intended to revise the applicable prospectus effective December 3, 2007. (*Id.*)

First Trust examined Defendants' revised prospectus and determined that the funds to be generated using the redesigned investment strategies would not infringe the claims of the '760 patent. Settlement discussions with Defendants began, and prosecution of this lawsuit was temporarily suspended by agreement of the parties. Because the parties were unable to agree on settlement terms, First Trust has opted to terminate this action through a voluntary motion to dismiss pursuant to FED. R. CIV. P. 41(a)(2).

## II. APPLICABLE LEGAL PRINCIPLES

### A. Voluntary Dismissal Under Rule 41(a)(2) Is Committed To The Discretion of The District Court

Federal Rule of Civil Procedure 41 provides in pertinent part:

> [A]n action shall not be dismissed at the plaintiff's insistence save upon order of the court and upon such terms and conditions as the court deems proper. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

FED. R. CIV. P. 41(a)(2).

Because dismissal under Rule 41 is a procedural matter not specific to patent law, the Court applies the law of the Seventh Circuit to determine this issue. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.3d 1564, 1574,75 (Fed. Cir. 1984) ("We, therefore, rule, as a

matter of policy, that the Federal Circuit shall review procedural matters, that are not unique to patent issues, under the law of the particular regional circuit court where appeals from the district court would normally lie."); *see also SmithKlineBeecham Corp. v. Pentech Pharms., Inc.*, 261 F. Supp.2d 1002, 1006 (N.D. Ill. 2003).

The express language of Rule 41 makes clear that the decision as to whether to grant a voluntary dismissal motion is committed to the sound discretion of the district court. *Tyco Labs., Inc. v. Koppers Co., Inc.*, 627 F.2d 54, 56 (7th Cir. 1980). The district court abuses its discretion only when it can be shown that the defendant will suffer "plain legal prejudice" as a result of the dismissal. *Federal Deposit Ins. Corp. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992). Certain factors should be considered in determining if a defendant has suffered plain legal prejudice. *Id.* These factors include: the defendant's expense and efforts in preparing for trial, excessive delay or lack of diligence on the plaintiff's part in prosecuting the suit, unsatisfactory explanation or insincere motive in requesting a dismissal, and whether any motions (e.g., motion for summary judgment) are pending. *Id. See also U.S. v. Outboard Marine Corp.*, 789 F.2d 497, 502-3 (7th Cir. 1986).

## B.     Subject Matter Jurisdiction Requires An Actual Controversy

First Trust's voluntary dismissal will terminate its patent infringement claim against Defendants. But Defendants' declaratory judgment counterclaims would be subject to dismissal only by agreement or if the district court no longer had subject matter jurisdiction.

In order for a federal court to have Article III subject matter jurisdiction over a declaratory judgment counterclaim, a case or controversy must exist through all stages of the litigation, not merely at the time a declaratory judgment action is filed. *Preiser v.* Newkirk, 422 U.S. 395, 401 (1975). "Challenges to subject-matter jurisdiction can of course be raised at any

time prior to final judgment." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571

(2004); *see also* FED. R. CIV. P. 12(b)(1) ("Every defense, in law or fact to a claim for relief in

any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted

in the responsive pleading thereto if one is required, except that the following defenses may at

the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter....").

**C.     The Controversy Must Be Of "Sufficient Immediacy And Reality"**

A party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of

showing an actual controversy:

> Our decisions have required that the dispute be definite and concrete, touching the
> legal relations of the parties having adverse legal interests; and that it be real and
> substantial and admit of specific relief through a decree of a conclusive character,
> as distinguished from an opinion advising what the law would be upon a
> hypothetical state of facts. .... Basically, the question in each case is whether the
> facts alleged, under all the circumstances, show that there is a substantial
> controversy, between parties having adverse legal interests, of sufficient
> immediacy and reality to warrant the issuance of a declaratory judgment.

*MedImmune, Inc. v. Genetech, Inc.*, 127 S. Ct. 764, 772 (2007). Before *MedImmune,* the courts

applied a two-part test for determining subject matter jurisdiction in a declaratory judgment

patent action:

> There must be both (1) an explicit threat or other action by the patentee, which
> creates a reasonable apprehension on the part of the declaratory plaintiff that it
> will face an infringement suit, and (2) present activity which could constitute
> infringement or concrete steps taken with the intent to conduct such activity.

*Super Sack*, 57 F.3d at 1048 (citing *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978

(Fed. Cir. 1993)). The Federal Circuit acknowledged that the "Supreme Court's opinion in

*MedImmune* represents a rejection of our reasonable apprehension of suit test." *SanDisk Corp. v.

STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007).

### D.    A Covenant Not To Sue Divests the Court of Subject Matter Jurisdiction

In *Super Sack*, the Federal Circuit held that a patent owner's covenant not to sue an alleged infringer divested the district court of subject matter jurisdiction over the alleged infringer's claims for declaratory judgment of patent invalidity and unenforceability. 57 F.3d at 1059-60.    There, the patentee provided the following covenant:    "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056.  The Federal Circuit held that, in promising not to sue, Super Sack eliminated "the existence of an actual controversy," thereby rendering the declaratory judgment claim nonjusticiable. *Id.* at 1055, 1060. *See also Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 638 (Fed. Cir. 1991) (affirming the district court's conclusion that filing of a "Statement of Non-Liability" rendered moot the case or controversy and required the court to dismiss for lack of subject matter jurisdiction).

The Federal Circuit's recent decision in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) clarifies that a covenant not to sue continues to be sufficient to divest a trial court of subject matter jurisdiction, even under the new legal standard under *MedImmune*. In *Benitec*, the plaintiff filed for patent infringement, and the defendant responded with declaratory counterclaims of invalidity and unenforceability.  After the Supreme Court issued its decision in *Merck KgaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193 (2005), the plaintiff sought dismissal because it had no viable infringement claims against the defendant. *Id.* at 1343.

In response, the defendant argued that the court maintained jurisdiction over the matter because the defendant intended to expand its technology to cover products that would be allegedly infringing. *Id.* at 1348.   The district court dismissed both the complaint and counterclaims without prejudice. *Id.* at 1349 (emphasis added).  On appeal, the plaintiff

stipulated that it "covenants and promises not to sue [defendant] for patent infringement arising

from activities and/or products occurring on or before the date dismissal was entered in this

action-September 29, 2005." *Id.* at 1352.

Applying the *MedImmune* standard, the Federal Circuit upheld the dismissal of the

defendant's counterclaims for lack of jurisdiction, on the ground that there was no "substantial

controversy, between [plaintiff and defendant], of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." *Id.* at 1343. Regarding defendant's future plans to engage

in allegedly infringing activities, the court concluded that the defendant "has not shown that its

discussions [regarding expansion] into [potentially infringing] products meet the immediacy and

reality requirement of *MedImmune*." *Id.* at 1348. The court held:

> In the instant case, [plaintiff] made its covenant and sought dismissal of its
> infringement claim after it concluded that the *Merck* decision precluded an
> infringement claim based upon the activities of [defendant] on which [plaintiff]
> had instituted its suit. Under these circumstances, there is no controversy between
> the parties concerning the infringement by [defendant].

*Id.* *See also Furmniator, Inc. v. Ontel Prods. Corp.*, No. 4:06-CV-23 CAS, 2007 U.S. Dist.

LEXIS 77642, at *35, 44-45 (E.D. Mo. Oct. 18, 2007) (attached as Ex. 8) (dismissing

defendants' declaratory judgment counterclaims, finding that "plaintiff has given defendants a

covenant not to sue which is as broad as the covenant that the Federal Circuit found sufficient to

destroy any actually case or controversy for purposes of declaratory judgment in *Benitec*.").

## III. FIRST TRUST REQUESTS THAT ITS PATENT INFRINGEMENT CLAIM BE VOLUNTARILY DISMISSED

In light of Defendants' redesign of the investment strategies used to create the Accused

Funds, and providing that the Court dismisses Defendants' declaratory judgment counterclaims,

First Trust requests a voluntarily dismissal without prejudice of its patent infringement claim against Defendants pursuant to FED. R. CIV. P. 41.[1]

Dismissal of First Trust's patent infringement claim would not cause the Defendants to suffer plain legal prejudice. *See Knostman*, 966 F.2d at 1142. In particular, none of the parties have made significant efforts or investments in preparing for trial. *Id.* Indeed, this case was filed less than a year ago, and a trial date has not been set. Up until now, the parties have engaged in very little written discovery, no documents have been produced, no depositions have been noticed or taken, and there are no motions pending. Further, First Trust has diligently prosecuted this action. Finally, First Trust has no ulterior motives in seeking dismissal at this time. *Id.* First Trust now respectfully requests that this Court grant its Motion, and enter an Order dismissing without prejudice First Trust's patent infringement claim in this action pursuant to FED. R. CIV. P. 41(a)(2).

## IV. FIRST TRUST'S COVENANT NOT TO SUE VITIATES SUBJECT MATTER JURISDICTION OVER DEFENDANTS' COUNTERCLAIMS

First Trust has expressly promised the Defendants that it will not assert the '760 patent against any of the Defendants' conduct prior to February 6, 2007 involving the Accused Funds, or any conduct on or after February 6, 2007 involving the Accused Funds provided that the Accused Funds continue to be generated using the methodologies disclosed in Defendants' modified prospectus effectively dated December 3, 2007. (Ex. 1.) As a result of this covenant, Defendants cannot, as a matter of law, argue that there still exists any real and substantial controversy of "sufficient immediacy and reality" that would support the ongoing jurisdiction of

---

[1] Of course if the Court declines to grant First Trust's Motion, First Trust is prepared to proceed with the litigation, reserving all rights, including the right to contest the outcome due to lack of subject matter jurisdiction.

this Court over Declaratory Judgment claims seeking to establish the invalidity or non-infringement of the '760 patent. *MedImmune,* 127 S. Ct. at 772.

Like the defendants in *Super Sack*, here, the Defendants can have "no cause for concern that [they] can be held liable for any infringing acts involving [the identified] products" that they made, sold, or used before [February 6, 2007]." 57 F.3d at 1059. Further, First Trust has covenanted not to sue Defendants for any conduct on or after February 6, 2007 involving the Accused Funds provided those funds continue to be generated using the investment strategies disclosed in Defendants' December 3, 2007 amended prospectus. Accordingly, there is no longer any live case or controversy with respect to any of the claims of the '760 patent, and therefore, Defendants' counterclaims seeking a declaratory judgment of invalidity or non-infringement should be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). *See id.* at 1058-60 (affirming trial court's dismissal of patent infringement action for lack of jurisdiction after the plaintiff stated that it would not now, or in the future, sue the defendant for infringement of the patent-in-suit).

## CONCLUSION

Based upon the covenant that First Trust has granted to Defendants, the Court no longer has subject matter jurisdiction over the Defendants' Declaratory Judgment counterclaims pursuant to FED. R. CIV. P. 12(b)(1). Those counterclaims should be dismissed along with First Trust's patent infringement claim against Defendants. For the reasons stated above, First Trust respectfully requests that this Court (1) order the voluntary dismissal of Plaintiffs' patent infringement claim without prejudice and (2) order the dismissal without prejudice of Defendants Declaratory Judgment Counterclaims. Accordingly, granting First Trust's Motion will dispose of this action in its entirety.

Respectfully submitted,

Dated: March 28, 2008      By:    /s/ Stephen F. Sherry
Lawrence M. Jarvis
Stephen F. Sherry
Sara J. Bartos
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 (fax)

Attorneys for Plaintiffs,
FIRST TRUST PORTFOLIOS L.P. and
FIRST TRUST ADVISORS L.P.

## CERTIFICATE OF SERVICE

The undersigned herby certifies that on March 28, 2008 a true and correct copy of the foregoing **PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 41(a)(2)** was served by hand delivery on:

James R. Ferguson, Esq.
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, IL 60606

and via electronic mail on:

James R. Ferguson
JFerguson@mayerbrown.com

and

Andrea C. Hutchison
AHutchison@mayerbrown.com

Dated: March 2008

12